Apperson v. Harris.

E. M. APPERSON v. ISHAM G. HARRIS AND J. D. C.
ATKINS, Adm'r.

ADMINISTRATION. *Sale of decedent's lands for debts. Personal assets. Slaves.
Liability of administrators. Practice.* The original bill was filed under
sec. 2267 *et seq.* of the Code, against the widow, heirs and administra-
tors of the intestate, alleging an exhaustion of intestate's personal
estate in payment of debts, and setting up an unpaid claim of com-
plainant, and asking a sale of land to pay it. The administrators
make no material defense. The widow and heirs answer, and deny
the justice of complainant's claim and the exhaustion of the personal
estate, and rely upon the statute of limitations of two years and six
months as a bar to any relief against the land of the estate. Subse-
quently complainant filed a supplemental bill, charging that the ad-
ministrators had never filed any inventory of the assets not exhausted
in the payment of the debts, and charging that all said unexhausted
assets were received or used by the widow and heirs, or were worth-
less and unavailable. No charge was made, in either bill, of any
want of diligence or waste of assets by the administrators, or that
they had otherwise rendered themselves personally liable by their
mismanagement of the estate. The supplemental bill asks a discov-
ery of the administrators, whether, *after* a request for delay, as
charged in the original bill, had been granted them by complainant,
they had received sufficient money of the estate to pay complainant's
debt; and complainant prays a decree for his debt, and a sale of
enough land to pay it; and if this cannot be done, then he asks a de-
cree against the administrators and assets, and against each of the
distributees for the value of the personal assets received and used by
them, and for general relief. On appeal to this court, it was adjudged
that the statute of limitations was a good defense for the widow and
heirs and distributees, and the bill stood dismissed as to them. The
cause was remanded to ascertain the debt, the administrators not
having plead the statute of limitations. No judgment or decree was
rendered against them by this court. The proof shows that all the
personal assets of the estate had been collected and exhausted in pay-
ment of debts, except sixteen slaves, which had been divided among
the distributees of the estate by a regular court proceeding before the
war. *Held:*

1. Complainant is entitled to no decree against the defendants *as adminis-*

*trators*—1st. Because there are no assets in their hands to be administered, and none to come into their hands for that purpose.    2d. Because complainant is cut off from any relief as against the real estate by reason of the interposition by the heirs of the defense of the statute of limitations.    3d. Because a decree that can yield nothing, and can never be made effective by the court rendering it, should not be rendered.

2. Complainant is entitled to no *personal* decree against the administrators—1st. Because the bill contains no allegations whereon to predicate such a decree.    2d. Because it would be a most incongruous proceeding, under a bill to sell land or appropriate assets discovered to the payment of a debt of the decedent, to seek to hold the personal representative liable *personally*, or to have any personal decree against him.    3d. Because the personal assets of the estate have all been properly applied in the payment of debts.

3. The title to the slaves passed to the distributees, and, like real estate, the slaves were assets, *sub modo*, in the hands of the personal representatives; and could only be applied to the payment of the debts of the estate, when *necessary* for that purpose, by a regular proceeding in court, at the instance of the administrators or creditors of the estate.

4. ARGUENDO. It is the settled rule of practice in a proceeding under sec. 2267 *et seq.* of the Code, in case it appears that the personal assets have not been exhausted in the payment of the debts of the estate, for the court first to apply such assets, and then sell only enough lands to pay the *remainder* of the debts.

5. BILL FOR ACCOUNT OF ASSETS. *Creditor's remedy.* If a creditor by his bill seeks an account of assets against the personal representative, and a payment of his debt, if the debt be uncontested, or is proven, and the representative admits assets, the complainant is entitled on the hearing to an immediate decree for payment, without taking an account of the assets of the estate. The same is true where the representative denies assets in his hands at the time of filing his answer, *if he* also discloses that he had, at one time, had sufficient assets, but had since *misapplied* them. But in neither of the cases supposed would the creditor be entitled to such a decree, if it appear, as it does in this case, that the assets, shown to have been in the representative's hands, have not been *misapplied*, but properly applied in the payment of debts.

6. ADMINISTRATOR. *Cannot retain to pay barred debt.* An administrator cannot retain assets to pay a debt barred by the statute of limitations of two years and six months; and in case he pay such a debt, he

would be liable to the distributees of the estate for a misapplication of the funds of the estate.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

ESTES & ELLETT and MYERS & SNEED for complainant.

T. B. TURLEY for defendants.

FREEMAN, J., delivered the opinion of the court.

The case made in the pleadings and proof in this record is substantially this:

The Hon. Wm. R. Harris died on the 19th of June, 1858. At the July term, 1858, of the county court of Shelby county, administration was granted on his estate to the respondents, Hon. Isham G. Harris and J. D. C. Atkins. The estate was large and valuable, consisting of lands in Tennessee, with about sixteen slaves, personal property of other kinds, debts due the estate, etc. In addition, there was a large plantation in Arkansas, with upwards of forty slaves on it, with outfit, which was being worked profitably, as we take it, from the crops shown to have been sold from it by the complainant, who was the commission merchant and factor of Judge Harris in his lifetime, and to whom the crops were consigned for sale after his death. There seems to have existed considerable indebtedness on the part of Judge Harris

at his death, the amount not shown, but the estate was justly deemed ample, and we may fairly assume that all the debts have been paid by the administrators except the one now in contest.

This claim appears in the form of a balance of an account due complainant, made, as a matter of course, before the death of Judge Harris. This account seems to have been called to the attention of I. G. Harris, administrator, about June 5, 1860, by Apperson & Co., when he wrote them the following letter, signed by himself and Atkins as administrators of the estate:

"Memphis, June 5, 1860. Messrs. E. M. Apperson & Co.—Gents: Your note calling attention to the balance of account of Wm. R. Harris, deceased, due you, has been received. In answer to which I have to state, that the present monetary condition of the estate is such as to make it inconvenient for us to pay the balance at this time. We must ask you to wait for a short time, when we hope to be able to pay it, and even though the two years after administration may expire, the statute of limitations shall not affect your right. Respectfully, Isham G. Harris and J. D. C. Atkins, by I. G. Harris, administrators of estate of Wm. R. Harris, deceased."

No more seems to have been done towards the collection of this claim until after the war, when the original bill in this case was filed in September, 1865. It is simply a bill, under the act of 1827, Code, sec. 2267 *et seq.*, to sell land for the payment of the debt, meeting the question of statute of limitations by the effect, or assuming to do so, of the above letter, as

a request for delay under sec. 2280 of the Code.
The widow and heir of Judge Harris were made par-
ties as residents, but the administrators being absent
from the State, the fact is so charged, and they made
parties by publication.    The bill, as required by sec.
2276, charged an exhaustion of the personalty in pay-
ment of debts, and this debt to be just and unpaid.

The widow and heir answered, and contested the
justice of the claim, in addition to which they ex-
pressly denied that the personalty had · been exhausted
in payment of debts.    They also interposed a plea of
the statute of limitations of two years, or two years
and six months, in bar of the claim.

Atkins also answered this bill, but not having ac-
tively participated in the administration, knew nothing
of the case.

After taking considerable testimony, and among
others the deposition of the widow of Judge Harris,
in which counsel of complainant endeavored very ear-
nestly to show an exhaustion of the personalty—and,
we may add, made out a state of facts tending to
show the fact, though not sufficient perhaps to sustain
their bill—on the 17th of April, 1867, complainant
filed an amended and supplemental bill, the object of
which was evidently to meet the obstacle presented by
the defense of exhaustion of personal assets.    After
reciting the facts of the original bill by way of sup-
plement, it was charged, that, since filing the original
bill, Atkins had taken up his residence in Tennessee.
After stating the fact that the answer filed had ear-
nestly contested the question of exhaustion of assets,

they say that said administrators never filed any inventory of the assets of said estate which were not exhausted in the payment of debts. They—that is, such as had not been so used—were received or used by the defendants, the widow and heirs and distributees, or are virtually worthless and unavailable. This bill still goes on the theory, that practically there had been an exhaustion of the assets, and insists the court shall protect complainant against "the attempt of respondents to defeat the claim upon the technical pretext that the personal assets have not been *literally* exhausted in payment of debts." The bill then goes on to insist on the right of complainant to have a discovery from the resident administrator of the matters involved in the suit, and in the event the administrators have not *really* exhausted the personal assets within the meaning of the statute, to prevent multiplicity of suits, they say they are entitled to a judgment against the administrators and assets for the amount of the debt due; or if the defendants—meaning, evidently, the parties charged as having done so, to-wit, the widow and heirs or distributees—have received any personal assets of said estate, they will be required to account for the value of the same.

The prayer of the bill, when taken in connection with its allegation of facts, is strictly in accord with the whole theory of the case as shown in the original and supplemental bills, and seeks a discovery of the personal assets that came to the hands of the administrators, and that they state who received and used them, and who now holds them, and whether the ad-

ministrators are now chargeable with any assets which were not legitimately used in proper course of administration. They specially ask a discovery whether, *after* the request for delay, they received any funds or money belonging to said estate sufficient to pay complainant's debt; and, in conclusion, they pray for a decree for their debt, a sale of a sufficiency of the real estate to pay it, and if this cannot be done, then a decree against the personal representatives and assets, and against each of the defendants for the value of the personal assets which they received and used, and for general relief.

We have thus at length set out the material charges of this bill. It is evident it may be characterized as a supplemental bill to meet the defense of exhaustion of assets, and in the event such assets were shown in the hands of the administrators, to have a decree against the representatives and assets—that is, ascertaining the debt and appropriating the assets so discovered; but if gone into the hands of the widow and distributees, as charged, then against the parties so receiving them. The defendants referred to in the last clause are evidently the widow and distributees, who, in the statement of facts, are charged to have received and used the personalty. There is certainly no intimation of any purpose in any part of the bill that the representatives had incurred any personal liability whatever—been guilty of a *devastavit* by wasting the assets, or any equivalent act. They are simply made parties as administrators, for the purpose of ascertaining the debt and taking an account of the

estate, as was proper under the act of 1827, in order to have the realty subjected to the debt; and then, by the supplemental bill, for discovery of assets, either in their own hands or of distributees, and an appropriation of these assets; but a sale of the land is still kept prominent as the leading object of the bill, as shown by the prayer for its sale first, but if this could not be done, then the decrees are sought, as shown, against the assets in the hands of the administrators, or against distributees who had received and used them.

We may add, that the subsequent conduct of the case by able counsel shows this to have been the whole theory of the case, and the one on which it was conducted. We find complainant taking the deposition of Gov. Harris, the administrator, and earnestly endeavoring to show by him the assets exhausted. They make him prove that, after the request, he never received any money or made any collections that were not properly appropriated to pay debts. They then prove by him that after he had handed over the papers of the estate to Mrs. Harris, and she to her son, that of the claims thus handed over— some marked doubtful, some insolvent, some good— the son had only collected about $1,046, all of which had been appropriated properly to the payment of debts. There is neither charge of failure of diligence in collection of assets in the bill, nor effort to show such thing in the proof; on the contrary, the amount of collections is proven by complainant, and the proper appropriation of the money so realized.

A short statement of a few other facts will present the questions for our decision.

The case went to a decree, when the chancellor held certain proof of entries made by clerks of Apperson & Co. in their books, incompetent, and so the account could not be proven, and the respondents had judgment in their favor, from which there was appeal to this court, where the decree was reversed as to this point. In addition, it was adjudged that the plea of statute of limitations was a complete defense against the claim on the part of the heirs and distributees, and the bill stood dismissed as to them. The case was remanded to take the account as to the debt, the administrators having failed up to this time to plead the statute of limitations. No judgment or decree is entered against them in any form, only the decree for an account of complainant's debt. This changed the aspect of the case materially, as will be seen, or rather the views of complainant.

And now to another branch of the case. It appears from the answer of Harris, the administrator, that in the spring of 1862, probably February of that year, he handed over the claims due the estate to the widow of Judge Harris, he being compelled to go South on approach of the Federal army—which he says were some doubtful, some insolvent, and some good, how many of each he does not pretend to be able to state. He proposes, however, to furnish a list of these claims, which he afterwards does. He says that, including the slaves (shown to be about sixteen in number), the personalty was ample to pay

this debt. The widow seems to have given these claims to her son, William Harris, Jr., who is shown, as we have said, to have collected $1,046 on them, and to have paid this money in discharge of debts of the estate. The slaves are shown to have been divided between the heirs or distributees before the war by a decree of court.

Laying aside other questions for the present, what are the rights of complainant on this state of facts as against the administrators? What decree, if any, can be made in his favor?

We may concede the law as stated by Mr. Williams on Executors, vol. 2, p. 1760: "If plaintiff's demand be uncontested or proved, and the executor *admits* assets, the plaintiff is entitled on the hearing to an immediate decree for payment, without taking an account—that is, of the estate. And it may be further observed, that the same doctrine applies though the executor denies assets in hand at the time of filing his answer, *if he* also discloses that he had at one time sufficient assets but that he has since *misapplied* them." This is on a bill seeking an account of assets against the representative, and a payment of a debt. "And if the bill charges that the executor has rendered himself personally liable to pay the plaintiff's debt or legacy by an admission of assets before suit, or by any other means, and the plaintiff can sustain this allegation, he will be entitled to a decree for payment at once": *Ibid.*

These principles, referred to and cited by complainant's counsel in his brief, are made the basis of a

claim for a decree against these administrators, either in their representative capacity or directly against them personally. On the facts of the case, does the conclusion sought follow?

So far as the representatives are concerned in this case, we may assume for the present the claim is either uncontested or is proven to be a subsisting debt against the estate. But is there an admission of assets to meet the other proposition of the rule, or the second rule stated?—that if assets are denied, but there appears that he had sufficient assets which had been misapplied.

The admission is, that there were notes and accounts in his hands in February, 1862—some good, some doubtful, and some insolvent. It is not admitted, nor is it charged, or proven, that these claims had since been realized, or could have been realized by proper diligence, or might have been so realized before the time they were placed in the hands of the widow; on the contrary, there is an earnest effort on the part of complainant in his proof to show that they were, as charged, unavailable and worthless. He, however, does prove by the administrator that $1,046 had been collected by William Harris; and this might have charged the administrators, under this bill seeking a discovery of assets, by reason of this sum received, to this amount and no more. But complainant has then himself proven, by the same witness, that this money so collected was properly used and appropriated to the payment of the debts of the estate. The only assets, then, except the slaves, which are

charged to render the administrators liable, if any, in the bill, are these notes and claims, and they are never shown to have been realized except to the amount stated, and that properly used, and *not* misapplied. No liability is charged or sought to be fixed by reason of want of diligence in management of these claims. We are unable to see on what principle it could be held, under the rules cited, any liability can attach by reason of these debts, as assets of the estate. None, unless their collection and proper appropriation can be made the basis of such liability. This will not be contended for by the learned counsel, and this disposes of this aspect of the case in favor of respondents.

As to the slaves, we need but say, that it has been settled by numerous cases in our State they were only assets *sub modo*—like real estate; that the title to them did not go to the personal representative, but vested directly in the distributees or legatees, in like manner as lands go to the heirs. They were subject to be made liable for the debts of the estate by the administrator, under the act of 1827, ch. 61, and, as was held in *Saunders, Ex'r,* v. *Wilder et al.,* 2 Head, 581, they were equally liable to be reached by the creditor, and this, it was said, on an equitable construction of the statute. In either case, however, it could only be done by a regular proceeding in court, making the distributees or legatees and personal representative parties. They could not be taken by execution or judgment against the representative: *Ibid.* Under this act of 1827, the administrator was only

required to sell slaves to pay debts, when he shall find it *necessary* to sell or dispose of them for this purpose. No claim is made in this bill that there was the slightest failure of duty in this respect on the part of the administrators, nor any liability sought arising out of this aspect of the case. There was no such necessity at the time, and up to the time of handing over the other assets to the widow; and at this time, by the laches of the creditor, as against the distributees, the claim was clearly barred by time, and would have been defeated by them, if it had been attempted, on this ground. The subsequent loss of this property by the results of the war, there being no breach of duty in not selling before, will not charge the representatives.

Another question is proper to be disposed of at this point. What is the extent and effect of the former decree of this court in this case? It is as follows: "The plea of the statute of limitations of six and seven years pleaded by defendants, is disallowed, but the plea of the statute of limitations of two years and six months pleaded by the distributees, is held to be a bar to the claim in this suit as against the said distributees; but the administrators, I. G. Harris and J. D. C. Atkins, having failed to plead said statute, the same will not avail them as a bar to the action. The chancery court will take the account between the parties, and admit the evidence of Apperson's books and entries therein presented in the record, as competent evidence to prove the account sued on, the court holding that said evidence is competent."

It is seen that nothing is hinted at tending towards a personal liability of the representatives in this decree, nor anything adjudged as to what decree should be rendered when the account as to Apperson's debt should be ascertained. We must, then, look to the pleadings, and case made under them, to see if any decree can be rendered, and if so, what.

When we look at the frame of the bill and amended bill, we see that they are, as we have said, but this: An original bill to sell lands descended for payment of debts, and then, on the defense being made that the personalty had not been exhausted, a supplemental bill, the matter of which is nothing more than the basis for discovery of such assets, and an appropriation of them, when so discovered to the payment of complainant's debt. If none discovered, then a sale of the land. Practically and in fact, this is nothing more or less than the regular inquiry made in all such cases on reference to the clerk and master to ascertain whether the personalty has been exhausted in the payment of debts, though presented in the form of a supplemental pleading asking a discovery in aid of the investigation. Under the rule settled in *Dulles* v. *Read*, 6 Yer., if any such assets are discovered, it is the duty of the court first to apply such assets to the payment of the debt, and then only sell enough of the land as may be necessary to discharge so much of the debt as remains. Now, under the pleadings in this case, this is substantially all that is sought, the prayer being for judgment against the personal representatives and assets, if found in their hands, and

against the distributees, if any of them had assets in their hands, or had used them. In view of this, the parties had the right to have their debt ascertained, and if they chose, a decree to that effect; and in this case it is probable they might have had a further inquiry as to assets, as nothing had been adjudged on that question, and this inquiry would, under the form of the proceeding, have been properly preceded by an ascertainment of the existence of a debt for which the estate was liable.

But it would be a most incongruous proceeding under our practice, under a bill to sell land or appropriate assets if discovered to the payment of a debt, that a personal liability should be sought against the personal representative, or that any decree whatever should be made against such representative. I suppose in practice no such thing has ever been thought of, nor any such decree ever had in our courts. The debt is ascertained as *bona fide,* the assets shown to be exhausted, and the land ordered to be sold, and if any personal assets are developed during the investigation, they are collected under the direction of the court and applied to the debt, and then land sold for payment of balance due. This seems all too clear for dispute or serious contest. It follows, that the decree to ascertain the debt as *bona fide* might well have been made; but whether the debt could be realized under the facts, was a question not adjudged, and a matter, at the time of passing this decree, not ascertained, nor did the court reach the point where it was necessary to decide this question, until after the

account ordered and the debt ascertained. This has been done. But, on looking into the facts of the case, we find all the personalty that has been discovered has been properly appropriated to the payment of debts, and this proven by complainant; and as to the slaves, we find they have been emancipated, and cannot be subjected in any proceeding, certainly not in this, even if they were still property, and no personal default whatever charged on the administrators in the way of a *devastavit* to charge them personally, even if the frame of the pleadings might have permitted this. And so we can see no ground whatever on which any decree can be made, further than that the debt is established to exist as between the administrators and complainant, but no assets in their hands either at filing of the bill or now to meet it. As to the land descended, the heirs have defeated any recourse on that, and so an ascertainment of the debt would end the case—a fruitless decree practically to complainant. Even if we should go to an extreme limit on such a bill and give a decree to be levied of goods and chattels, &c., that may hereafter come to the hands of the administrators, still we can clearly see no such assets can ever come to their hands, and so this also would be futile. A decree that can yield nothing, never be made effective by the court rendering it, is one that ought not to be made by a judicial tribunal.

The reasoning and conclusion is strictly in accord with what is implied in the matter required to be averred under a plea of *plene administravit* at law—

that is, "that he has fully administered all the goods and chattels which were of the said testator at the time of his death, and that he had no goods or chattels which were of said testator at the. time of his death in his hands to be administered, nor had on the day of suing out the original writ of the plaintiff, or ever since." This is the form of such plea approved by this court in *Nixon* v. *Bullock,* 9 Yer., 414; see Milliken's Meigs' Dig., top p. 61, sec. 6. All these. averments are proven and sustained substantially by this record. We simply add, the bill charges no assets in the hands of these parties, no default, *devastavit,* or mismanagement on their part, on the contrary, assumes the opposite; and then in the proof this theory is maintained earnestly, not only by the course of examination of counsel, but by the testimony brought out, and there is nothing to contradict it. When a decree is sought on the answer of Harris, then that answer shows proper appropriation of assets as far as he was personally informed, and complainant supplements it by proving that there was such an application of the moneys collected, and does not attempt even to show more might or could have been realized. We think these considerations conclusive of the result in this case.

We add only, that the administrators certainly are not chargeable for not retaining assets in their hands to meet a debt barred by the statute of limitations, as. this court has held this debt was on the plea of the heirs. If they had paid it, they would have been liable to the distributees for misapplication of the

fund, and certainly cannot be charged for not doing that which would have been unlawful for them to do.

Having ascertained the rights of the parties, it is but our duty to enforce them. This we think we have done, and have no question as to the correctness of the legal conclusion reached on the facts in this record.

The result is, that for the reasons given the bill is dismissed.

In view of failure of parties to plead the statute of limitations, and other circumstances, we think the respondents should pay all the costs since the case was remanded from this court, both in court below and in this court.